worked only a short time after his or her anniversary, there would have been no need for the final phrase ("upon his return to active status") in the first sentence of Section 8.

It regards as significant that the parties expressly addressed the Company's obligations in the event of plant closing in the Preamble. It contends that there would have been no point in the Union negotiating over pro-rated vacation if the members were already entitled to it.

In the Company's view, the practice described by the Union is irrelevant, since the language of the agreement is clear and unambiguous. It submits that overwhelming arbitral authority supports that plain and unambiguous contract language prevails over any contrary practice. It maintains that the Union's evidence of the practice was weak, and that Amacher could recall only 6 or 8 instances of an employee being paid pro-rated vacation without actually returning to work. It regards instances where employees on layoff resigned and received accrued vacation benefits as irrelevant since in the current case no resignations have occurred. The Company also questions whether the practice continued to exist after 1998.

It considers the 2002 layoff as a unique event in the Company's history, so that the practice, even if proven, is inapplicable since the circumstances are different. It points to the Preamble as further recognition of the uniqueness of a plant closing.

The Employer asserts that the employees have not fulfilled a condition to the receipt of pro-rated vacation (return to active status), and that the Union contradicts any claim that the employees have been effectively terminated, through its position in other pending grievances that some of the employees should be returned to work.

It maintains that the agreement itself does not contain any specific provision dictating payment to a laid off employee absent a return to active service. Further, even under the practice discussed by Amacher, the Company would not yet be obliged to pay the accrued vacation benefits, since employees could not have reached their second anniversary dates following the layoffs by the date of the grievance, and many still have not reached their second anniversaries after the layoffs.

As to the amount on which any vacation benefits should be calculated, the Company points out that Amacher did not testify that any particular rate of pay (and in particular a higher rate than the rate in effect when the vacation pay was accrued) was used. It argues that the contract itself provides no basis on which to conclude that the higher rate is required.

It asks that the grievance be denied.

## Analysis and Conclusions

It has often been observed that vacation benefits have two aspects.

First, vacation provides the employee with a time for rest, relaxation and rejuvenation. Whether the employee uses his or her vacation time to visit the Grand Canyon, to go fishing, or simply to sleep late and watch soap operas, the employee has the opportunity to escape the work routine. If the employee returns

- 6 -

Exhibit 10

to work with renewed vigor and productivity, both employee and employer benefit from vacation. Some collective bargaining agreements explicitly require that an employee must "take" vacation in the form of time off from work, but the current agreement allows employees to receive at least some of their vacation in the form of pay in lieu of time off ( ¶ 153 ), and that unused vacation is paid on the following anniversary date in lieu of additional time off ( ¶ 156 ).

This points up the second aspect of vacation benefits, namely that such benefits are a form of deferred compensation. The employee earns the right to vacation compensation by working now, but enjoys the compensation itself (either in the form of time off with pay or in the form of additional pay in lieu of time off) at a future date.

This second aspect of vacation benefits is critical in the current case, and the resolution of the issue turns on whether such benefits are in effect vested at the time the employee accrues the additional day(s) of vacation entitlement, or whether such accrued benefits may be lost.

In my view, the key to resolving this issue is Paragraph 159: "All Employees whose services are terminated for any cause whatsoever shall receive with their final pay their accumulated vacation hours." It is apparent that the parties did not intend the word "terminated" in this paragraph in the narrow sense of "discharged" but in the broader sense of "ended". The sweeping phrase they chose ("for any cause whatsoever") suggests that they intended the rule set forth in this paragraph to be universal and without exception. Without doubt, every employee's employment ends at some point. It may be through death, discharge, retirement or some other cause, but Paragraph 159 states that regardless of the cause, the employee is to receive his or her "accumulated" vacation.

A permanent layoff with no expectancy of recall constitutes the end of an individual's employment. The collective bargaining agreement in this case calls for retention of seniority for 36 months, and in the case of a partial layoff, it might be difficult to conclude that an employee had no chance of recall at some point prior to the passing of the 36 month period. But here the WARN Act notices have been given, the operation has ceased, and, unfortunately, there is no realistic possibility that the vast majority of the employees will ever return to work for Motion Control. Even though 36 months have not yet passed, it can be said with reasonable certainty that their employment with the Company had ended. (A possible exception exists with respect to a few employees covered by other pending grievances. These will be discussed further within.)

"Accumulated" in Paragraph 159 has the same meaning as "accrued" vacation pay as the parties have used that term. (It will be recalled that the parties use "earned" vacation to refer to vacation benefits based on the last full year, from anniversary date through anniversary date, worked prior to the date in question, and "accrued" vacation to refer to vacation benefits based on the partial year worked from the most recent anniversary date through the date in question.) Employees consistently have been paid their earned vacation (to the extent they have not already received it) as well as their accrued vacation, at the termination of their employment through discharge, resignation, etc.

Paragraph 159 says to the employee, in effect, "Your accrued vacation benefits are in the bank; they cannot be taken from you." Although the Company reads Article 11 Section 8 ( ¶ 162 ) as providing a contrary result in the case of a layoff, I do not agree. The Company's interpretation would create a clash between Paragraph 162 and Paragraph 159, but in my view any interpretation of a collective bargaining agreement that posits one provision as contradicting another is disfavored. Accordingly, I read the phrase "upon his

- 7 -

Exhibit 10

return to active status" in Paragraph 162 as addressing when, rather than whether, a laid off employee is to receive his vacation benefits. The parties in Paragraph 162 appear to have assumed that all layoffs will be temporary, and that the affected employees will in fact return to active employment. But the inaccuracy of that assumption in the current case does not suggest to me that they intended to repeal the general rule stated in Paragraph 159 that an employee's accrued vacation benefits are his or hers to keep. By assuming that all layoffs would be temporary, the parties assumed that an individual's employment would never be terminated by layoff. Although that assumption proved incorrect in the current case, the Paragraph 159 precept continues to apply that whenever an employee's employment does terminate, regardless of how, that employee is entitled to receive all accrued vacation benefits.

Although I do not need to rely on the policy described by Amacher to reach this interpretation, I note that this policy is reasonably consistent with the collective bargaining agreement, as I have interpreted it. As she described it, once an employee reached his first anniversary after the layoff, it would no longer be possible for the employee to use the earned vacation (based on the one year period ending with the employee's most recent anniversary date prior to the layoff) in the form of time off, and thus the employee was entitled to pay in lieu of time off as of the next anniversary date. (See ¶ 156.) With the occurrence of an anniversary date after the layoff, the employee would not build up any further accrued vacation. On the anniversary date, that accrued vacation in effect became earned vacation that the employee could use in the form of time off with pay during the year between his/her first anniversary after the layoff and his/her next anniversary in the event he or she returned to work. But once a second anniversary date arrived, it was likewise impossible to use this vacation in the form of time off, and once again pay in lieu for this vacation was in order. Arguably the policy provided this second vacation pay check prematurely, since under Paragraph 162 the Company might have waited to see whether the employee would have returned to active status. But the policy (and it should be recalled that the Company itself designed the policy, in which the Union acquiesced) can also be regarded as recognizing that when a layoff lasts long enough that an employee observes two anniversary dates, it is sufficiently unlikely that the employee will ever return to active status that the situation envisioned by Paragraph 162 would not occur, and that the employee's employment has as a practical matter terminated, so that the principle of Paragraph 159 governs, even though a theoretical right to recall may still exist.

This leads to the Company's assertion that if the policy described by Amacher applies, it would not yet be liable to pay the accrued vacation benefits. But the situation involved in the current case is a bit different from the one described by Amacher. In that situation, as the layoffs last longer and longer, it seems increasingly unlikely that the employees would return to work, and while a theoretical possibility of recall existed up to 36 months of layoff, a point may be reached before then when it can be said that the employee has no reasonable likelihood of returning. Here, however, it has been apparent all along that the employees have no realistic prospect of returning to work for the Company, so that, despite recall rights, for most of the employees their employment has already effectively ended. Thus under Paragraph 159 they are already entitled to their accrued vacation benefits, and are not required to wait until their second anniversary dates following the layoff.

As noted above, pending grievances assert that a few employees should have been recalled at some point following the layoffs. Under the collective bargaining agreement as I have interpreted it, those employees are entitled at least to accrued vacation pay based on their service from their last anniversary dates prior to the layoff through the date of the layoffs. But depending on the outcome of the other grievances, they may be entitled to additional vacation benefits. In addition, the outcome of those grievances may affect when and how (time off or pay in lieu) those accrued vacations would have been paid. I expect that the

- 8 -

Exhibit 10

parties will be able to apply the principles expressed here to their situations, once the other grievances have been resolved. In the event that this may prove another erroneous assumption, however, I shall retain jurisdiction to resolve any issue in this regard, as well as any issue of how this award applies to the other employees not covered by the other pending grievances.

As to the proper rate of pay for computing the remedy, I conclude that the higher (effective July 1, 2002) rate should be applied. Typically vacation benefits are paid at the rate in effect at the time the vacation is taken or paid. Although it could be argued that the proper rate is the rate in effect at the time the vacation benefit accrued, for some employees this would involve calculating the vacation pay at two different rates. Paragraph 157 states that "Vacations shall be paid at the employee's classified rate . . . " [singular] I interpret this paragraph as meaning the rate in effect at the time the payment is made. Since it is clear that the vacation will not be paid until after July 1, 2002, the rates effective after July 1, 2002 are thus the current rates on which the payments are to be computed.

## Award

The grievance is sustained. The Employer shall make whole bargaining unit employees for its failure to pay them accrued vacation benefits, as set forth above. Jurisdiction is retained for the limited purpose of resolving any disputes which may arise in connection with this award.

Issued June 24, 2003

*Matthew M Franckiewicz*

Exhibit 10

# EMPLOYEE PAYRATE and VACATION

As of March 16, 2002

| FILE# | NAME | HIRE DATE | WARN ACT PAYRATE | CLASSIFIED RATE | 9 WKS PAY | 3/15/2002 VAC HRS REMAINING | | 3/16/2002 ACCRUED VACATION | TOTAL VAC 7/1/2002 $.15 pay increase |
|---|---|---|---|---|---|---|---|---|---|
| 20043 | Peterson, Donald S | 3/24/1953 | $16.73 | $16.73 | $6,022.80 | 40 | $669.20 | 240 | $4,015.20 | $4,726.40 |
| 20060 | Zaunick, Emil | 10/20/1958 | $16.73 | $16.73 | $6,022.80 | 136 | $2,275.28 | 120 | $2,007.60 | $4,321.28 |
| 20101 | Sheehan, Jack F | 7/20/1964 | $16.85 | $16.85 | $6,066.00 | 144 | $2,426.40 | 184 | $3,100.40 | $5,576.00 |
| 20173 | Olszewski, Richard J | 1/15/1968 | $16.35 | $16.35 | $5,886.00 | 224 | $3,662.40 | 80 | $1,308.00 | $5,016.00 |
| 20178 | Keller Jr, Anthony G | 1/22/1968 | $16.35 | $16.35 | $5,886.00 | 240 | $3,924.00 | 64 | $1,046.40 | $5,016.00 |
| 20260 | Mooney, George E | 6/10/1968 | $16.00 | $16.00 | $5,760.00 | 136 | $2,176.00 | 224 | $3,584.00 | $5,814.00 |
| 20283 | Lunder, William F | 7/29/1968 | $16.35 | $16.35 | $5,886.00 | 0 | $0.00 | 184 | $3,008.40 | $3,036.00 |
| 20295 | Samick, Robert F | 8/12/1968 | $16.73 | $16.73 | $6,022.80 | 112 | $1,873.76 | 184 | $3,078.32 | $4,996.48 |
| 20306 | Brown, James A | 9/3/1968 | $15.29 | $13.90 | $5,504.40 | 184 | $2,813.36 | 160 | $2,446.40 | $5,311.36 |
| 20356 | Rheed, Joseph F | 11/11/1968 | $16.35 | $16.35 | $5,886.00 | 176 | $2,877.60 | 120 | $1,962.00 | $4,884.00 |
| 20421 | Rockwell, Terry K | 4/21/1969 | $16.85 | $16.35 | $6,066.00 | 0 | $0.00 | 240 | $4,044.00 | $4,080.00 |
| 20446 | Verbeck, John C | 6/17/1969 | $14.85 | $14.85 | $5,346.00 | 12 | $178.20 | 200 | $2,970.00 | $3,180.00 |
| 20458 | Plyler, Samuel F | 7/28/1969 | $18.54 | $16.85 | $6,674.40 | 80 | $1,112.40 | 184 | $3,411.36 | $4,560.36 |
| 20468 | Hansen, Thomas C | 9/3/1969 | $16.34 | $14.85 | $5,882.40 | 100 | $1,634.00 | 160 | $2,614.40 | $4,287.40 |
| 20469 | Marsh, Theodore J | 9/2/1969 | $18.25 | $16.63 | $6,570.00 | 144 | $2,628.00 | 160 | $2,920.00 | $5,593.60 |
| 20475 | Weaver, Thomas P | 9/16/1969 | $16.10 | $16.10 | $5,796.00 | 192 | $3,091.20 | 144 | $2,318.40 | $5,460.00 |
| 20629 | Gess, Veryl B | 2/21/1972 | $16.89 | $15.35 | $6,080.40 | 240 | $4,053.60 | 40 | $675.60 | $4,771.20 |
| 20630 | Wilson, Charles D | 2/25/1972 | $17.38 | $16.15 | $6,256.80 | 240 | $4,171.20 | 40 | $695.20 | $4,908.40 |
| 20633 | Solomon, Paul J | 2/29/1972 | $17.71 | $16.10 | $6,375.60 | 160 | $2,833.60 | 40 | $708.40 | $3,572.00 |
| 20636 | Reisbome, Paul | 3/29/1972 | $16.81 | $15.35 | $6,051.60 | 124 | $2,084.44 | 240 | $4,034.40 | $6,173.44 |
| 20653 | Milford, William R | 7/12/1972 | $19.64 | $17.85 | $7,070.40 | 144 | $2,828.16 | 200 | $3,928.00 | $6,807.76 |
| 20656 | Chatfield, Keith L | 9/5/1972 | $17.99 | $16.35 | $6,476.40 | 64 | $1,151.36 | 160 | $2,878.40 | $4,063.36 |
| 20660 | Martinez, Ronald G | 12/26/1972 | $17.99 | $16.35 | $6,476.40 | 104 | $1,870.96 | 80 | $1,439.20 | $3,337.76 |
| 20665 | Griech, Roger P | 10/26/1972 | $14.60 | $14.60 | $5,256.00 | 92 | $1,343.20 | 120 | $1,752.00 | $3,127.00 |
| 20676 | Popson, Anthony F | 1/15/1973 | $18.54 | $16.85 | $6,674.40 | 240 | $4,449.60 | 80 | $1,483.20 | $5,980.80 |
| 20690 | Ward, Jack C | 4/2/1973 | $17.01 | $16.35 | $6,123.60 | 0 | $0.00 | 240 | $4,082.40 | $4,118.40 |
| 20692 | Busotto, Frank F | 4/9/1973 | $16.10 | $16.10 | $5,796.00 | 96 | $1,545.60 | 240 | $3,864.00 | $5,460.00 |
| 20694 | Fields, Marion E | 4/16/1973 | $16.10 | $16.10 | $5,796.00 | 28 | $510.20 | 240 | $3,516.00 | $3,966.40 |
| 20701 | Piatkiewicz, Raymond A | 4/30/1973 | $14.65 | $14.65 | $5,274.00 | 16 | $271.84 | 240 | $4,077.60 | $4,387.84 |
| 20705 | Yoims, Samuel A | 5/31/1973 | $16.99 | $16.15 | $6,116.40 | 24 | $444.96 | 240 | $4,077.60 | $4,934.16 |
| 20721 | Dovison, Thomas R | 6/12/1973 | $18.54 | $16.85 | $6,674.40 | 36 | $647.64 | 224 | $4,029.76 | $4,716.40 |
| 20747 | Clark, James E | 8/6/1973 | $15.95 | $15.75 | $5,742.00 | 200 | $3,190.00 | 184 | $2,934.80 | $6,182.40 |



EXHIBIT UNION 1 — Exhibit 11

EMPLOYEEPAYRATEandVACATION

| ID | Name | Date | Rate1 | Rate2 | Amount1 | Hours | Amount2 | Hours2 | Amount3 |
|---|---|---|---|---|---|---|---|---|---|
| 20759 | Jones, Rodney H | 9/4/1973 | $15.75 | $15.75 | $5,670.00 | 112 | $1,764.00 | 160 | $2,520.00 |
| 20767 | Hearne, Henry M | 9/26/1973 | $13.90 | $13.90 | $5,004.00 | 184 | $2,557.60 | 144 | $2,001.60 |
| 20795 | Rhodes, Lynn A | 1/30/1974 | $16.85 | $16.85 | $6,066.00 | 244 | $4,111.40 | 64 | $1,078.40 |
| 20813 | Hutchins, Dwight L | 3/19/1974 | $18.54 | $16.85 | $6,066.00 | 80 | $1,483.20 | 240 | $4,449.60 |
| 20820 | Gess Jr, Dale E | 4/8/1974 | | $13.90 | $6,674.40 | 0 | $0.00 | 240 | $5,980.80 |
| 20821 | Carnahan, Randall L | 4/1/1974 | $14.85 | $14.85 | $0.00 | 0 | $0.00 | | $0.00 |
| 20843 | Weyant, Rodney L | 5/8/1974 | | $14.85 | $5,346.00 | 32 | $475.20 | 240 | $3,564.00 |
| 20846 | Bailley, James W | 5/21/1974 | $16.35 | $16.35 | $5,886.00 | 36 | $588.60 | 240 | $3,924.00 |
| 20854 | Bowers, Thomas P | 6/4/1974 | | $16.85 | $0.00 | 0 | $0.00 | | $0.00 |
| 20861 | Santiso Jr, Anthony P | 6/18/1974 | $17.99 | $16.35 | $6,476.40 | 84 | $1,511.16 | 224 | $4,029.76 |
| 20862 | Woodward, Steve A | 6/24/1974 | $15.75 | $15.75 | $5,670.00 | 76 | $1,197.00 | 200 | $3,150.00 |
| 20863 | Davison, James W | 6/24/1974 | $16.35 | $16.35 | $5,886.00 | 40 | $654.00 | 200 | $3,270.00 |
| 20871 | Amacher Jr, George E | 7/17/1974 | $15.35 | $15.35 | $5,526.00 | 0 | $0.00 | 200 | $3,070.00 |
| 20882 | Barnett, Reid A | 8/19/1974 | $17.99 | $16.35 | $6,476.40 | 0 | $0.00 | 184 | $3,310.16 |
| 20885 | Laughner Jr, Richard R | 8/26/1974 | $16.37 | $16.35 | $5,893.20 | 136 | $2,226.32 | 160 | $2,619.20 |
| 20893 | Russell, Donald S | 9/9/1974 | $16.96 | $16.35 | $6,105.60 | 176 | $2,984.96 | 160 | $2,713.60 |
| 20899 | Rhines, David L | 9/17/1974 | $17.99 | $16.35 | $6,476.40 | 28 | $503.72 | 160 | $2,878.40 |
| 20902 | Richards, Harry J | 9/16/1974 | $16.85 | $16.85 | $6,066.00 | 208 | $3,504.80 | 144 | $2,426.40 |
| 20944 | Sullivan, Robert C | 12/9/1974 | $15.35 | $15.35 | $5,526.00 | 156 | $2,394.60 | 144 | $2,210.40 |
| 20957 | Kinley, Bruce A | 4/10/1974 | $15.16 | $14.85 | $5,457.60 | 240 | $3,638.40 | 104 | $1,576.64 |
| 20964 | Bauer, Stanford L | 4/30/1974 | $17.99 | $16.35 | $6,476.40 | 24 | $431.76 | 240 | $4,317.60 |
| 20965 | Puhala, William E | 5/13/1975 | $17.79 | $16.35 | $6,404.40 | 0 | $0.00 | 240 | $4,269.60 |
| 20972 | Slattery, Joseph E | 8/4/1975 | $16.06 | $14.60 | $5,781.60 | 176 | $2,826.56 | 240 | $3,854.40 |
| 20973 | Diehlick, Charles P | 8/6/1975 | $15.75 | $15.75 | $5,670.00 | 168 | $2,646.00 | 184 | $2,898.00 |
| 20981 | Clark, David P | 2/24/1976 | $16.15 | $16.15 | $5,814.00 | 228 | $3,682.20 | 184 | $2,971.60 |
| 20982 | Blank, Robert E | 3/1/1976 | $15.66 | $15.35 | $5,637.60 | 240 | $3,758.40 | 40 | $626.40 |
| 20984 | Simchick, John J | 1/9/1978 | $16.85 | $16.85 | $6,066.00 | 160 | $2,696.00 | 40 | $674.00 |
| 20999 | Goodreau, William J | 4/17/1976 | $17.33 | $15.75 | $6,238.80 | 104 | $1,802.32 | 64 | $1,109.12 |
| 21003 | Ribovic, Gary P | 4/22/1976 | $17.76 | $16.15 | $6,393.60 | 0 | $0.00 | 240 | $4,262.40 |
| 21026 | Plyler, Paul L | 6/14/1976 | $16.15 | $15.70 | $5,814.00 | 24 | $397.40 | 240 | $3,876.00 |
| 21028 | Anderson, Leonard C | 6/7/1976 | $16.35 | $15.75 | $5,886.00 | 0 | $0.00 | 240 | $3,912.00 |
| 21035 | Caggiano, Charles M | 6/9/1976 | $18.54 | $14.35 | $6,674.40 | 160 | $2,966.40 | 224 | $4,152.96 |
| 21039 | Linder, Thomas T | 6/10/1976 | $14.43 | $14.35 | $5,194.80 | 0 | $0.00 | 224 | $3,232.32 |
| 21047 | Mack Jr, Roy J | 3/22/1977 | $16.35 | $16.35 | $5,886.00 | 84 | $1,373.40 | 224 | $3,662.40 |
| 21051 | Copelli, Raymond J | 6/17/1977 | $16.85 | $16.85 | $6,066.00 | 0 | $0.00 | 200 | $3,370.00 |
| 21052 | Fields, Darcy L | 6/21/1976 | $15.60 | $15.60 | $5,616.00 | 48 | $748.80 | 200 | $3,120.00 |

EMPLOYEE PAY RATE and VACATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21089 | Irvine, Daniel S | 9/8/1976 | $18.54 | $16.85 | $6,674.40 | 40 | $741.60 | 160 | $2,966.40 | $3,738.00 |
| 21105 | Stahl, Jamie E | 9/17/1976 | $16.60 | $16.60 | $5,976.00 | 96 | $1,593.60 | 144 | $2,390.40 | $4,020.00 |
| 21119 | Wilson, Kenneth P | 9/27/1976 | $16.24 | $15.70 | $5,846.40 | 148 | $2,403.52 | 144 | $2,338.56 | $4,785.88 |
| 21126 | Geist, Randy S | 10/1/1976 | $17.99 | $16.35 | $6,476.40 | 8 | $143.92 | 144 | $2,590.56 | $2,757.28 |
| 21130 | Bennett, Leland J | 10/19/1976 | $17.27 | $15.70 | $6,217.20 | 124 | $2,141.48 | 120 | $2,072.40 | $4,250.48 |
| 21131 | Woodford Jr, Paul R | 10/18/1976 | $15.75 | $15.75 | $5,670.00 | 228 | $3,591.00 | 120 | $1,890.00 | $5,533.20 |
| 21135 | Boschini, Dennis P | 10/25/1976 | $17.33 | $15.75 | $6,238.80 | 216 | $3,743.28 | 120 | $2,079.60 | $5,873.28 |
| 21144 | Williamson, Allen R | 10/29/1976 | $13.38 | $13.38 | $4,816.80 | 240 | $3,211.20 | 120 | $1,605.60 | $4,870.80 |
| 21149 | Tripodi, David D | 11/15/1976 | $16.58 | $16.15 | $5,968.80 | 120 | $1,989.60 | 120 | $1,989.60 | $4,015.20 |
| 21151 | Stubbs, Ronald A | 11/16/1976 | $16.59 | $16.35 | $5,972.40 | 200 | $3,318.00 | 120 | $1,989.60 | $5,088.96 |
| 21153 | Taylor, Philip E | 11/17/1976 | $18.54 | $16.85 | $6,674.40 | 188 | $3,485.52 | 104 | $1,725.36 | $5,457.48 |
| 21156 | Vanlassel, Edmund B | 11/19/1976 | $18.54 | $16.85 | $6,674.40 | 200 | $3,708.00 | 104 | $1,928.16 | $5,681.76 |
| 21159 | Greenawalt, Robert J | 11/30/1976 | $17.03 | $16.35 | $6,130.80 | 168 | $2,861.04 | 104 | $1,771.12 | $4,672.96 |
| 21161 | Saltzzoni, Albert L | 12/7/1976 | $16.85 | $16.85 | $6,066.00 | 240 | $4,044.00 | 104 | $1,752.40 | $5,848.00 |
| 21164 | Dush, Richard B | 12/8/1976 | $16.85 | $16.85 | $6,066.00 | 232 | $3,909.20 | 104 | $1,752.40 | $5,712.00 |
| 21169 | Disque, Steven R | 12/15/1976 | $16.85 | $16.85 | $6,066.00 | 96 | $1,617.60 | 104 | $1,752.40 | $3,400.00 |
| 21170 | Huber, Darrell E | 12/16/1976 | $16.49 | $15.70 | $5,936.40 | 136 | $2,242.64 | 80 | $1,319.20 | $3,594.24 |
| 21181 | Dickanl, James E | 1/24/1977 | $17.15 | $16.35 | $6,174.00 | 144 | $2,469.60 | 64 | $1,097.60 | $3,598.40 |
| 21183 | Jewart, Timothy R | 1/24/1977 | $16.86 | $15.35 | $6,069.60 | 224 | $3,776.64 | 64 | $1,079.04 | $4,898.88 |
| 21188 | Wygant, John G | 3/15/1977 | $16.49 | $16.15 | $5,936.40 | 252 | $4,155.48 | 40 | $659.60 | $4,858.88 |
| 21193 | Glover, Richard A | 4/4/1977 | $18.54 | $16.85 | $6,674.40 | 32 | $593.28 | 200 | $3,708.00 | $4,340.00 |
| 21195 | Lowe, Jerry L | 4/5/1977 | $16.87 | $15.75 | $6,073.20 | 0 | $0.00 | 200 | $3,374.00 | $3,404.00 |
| 21196 | Gapinski II, Edwin P | 4/11/1977 | $18.54 | $15.75 | $5,878.80 | 120 | $1,959.60 | 136 | $2,220.88 | $4,336.08 |
| 21204 | Tassone, Ralph J | 5/2/1977 | $18.54 | $16.85 | $6,674.40 | 32 | $593.28 | 200 | $3,708.00 | $3,404.00 |
| 21230 | Disque, Pamela L | 8/26/1977 | $18.54 | $16.85 | $6,674.40 | 28 | $519.12 | 200 | $3,708.00 | $4,261.32 |
| 21231 | Bobenrieth, Linda M | 8/3/1977 | $15.35 | $15.35 | $5,526.00 | 144 | $2,210.40 | 136 | $2,087.60 | $4,340.00 |
| 21232 | Hood, Terry L | 8/26/1977 | | $15.75 | $0.00 | | $0.00 | 136 | $0.00 | $0.00 |
| 21237 | Borrello, Sande R | 9/6/1977 | $16.33 | $14.85 | $5,878.80 | 0 | $0.00 | 136 | $1,872.72 | $1,893.12 |
| 21240 | Dybowski, Stephen J | 9/17/1977 | $15.72 | $14.75 | $5,659.20 | 116 | $1,823.52 | 136 | $2,137.92 | $3,999.24 |
| 21243 | O'Rourke, Morris J | 9/17/1977 | $17.15 | $16.85 | $6,174.00 | 184 | $3,155.60 | 136 | $2,332.40 | $5,536.00 |
| 21245 | Carlson, Thomas G | 9/17/1977 | $13.77 | $13.77 | $4,957.20 | 0 | $0.00 | 136 | $1,872.72 | $1,893.12 |
| 21246 | Donachy, Lawrence E | 9/9/1977 | $18.54 | $16.85 | $6,674.40 | 108 | $1,819.80 | 136 | $2,521.44 | $4,218.88 |
| 21249 | Tassone, Robert I | 11/14/1977 | $16.85 | $16.85 | $6,066.00 | 88 | $1,823.52 | 104 | $1,928.16 | $4,148.00 |
| 21256 | Simon, Steve M | 11/17/1977 | $18.54 | $16.85 | $6,674.40 | 76 | $1,631.52 | 104 | $1,928.16 | $3,588.48 |
| 21260 | Mercer III, Richard C | 11/14/1978 | $17.93 | $17.85 | $6,454.80 | 76 | $1,362.68 | 104 | $1,864.72 | $3,254.40 |
| 21262 | Groeger, Carol A | 1/9/1978 | $16.85 | $15.35 | $6,066.00 | 80 | $1,348.00 | 72 | $1,213.20 | $2,584.00 |
| | | | $14.85 | $14.85 | $5,346.00 | 144 | $2,138.40 | 72 | $1,060.20 | $3,240.00 |

Exhibit 11

EMPLOYEEPAYRATEandVACATION

| | | | | | 9 WKS PAY | VAC HRS REMAINING | TOTAL VAC PRIOR 7/1/02 | ACCRUAL VACATION | ALL VAC $/ 7/1/02 RAISE |
|---|---|---|---|---|---|---|---|---|---|
| 21266 | Elias, Paul E | 1/23/1978 | $18.54 | $16.85 | $6,674.40 | 112 | $2,076.48 | 56 | $1,038.24 | $3,139.92 |
| 21273 | Kilhoffer, Louis C | 4/3/1978 | $15.34 | $14.75 | $5,522.40 | 0 | $0.00 | 200 | $3,068.00 | $3,098.00 |
| 21279 | Caggeso, James M | 4/13/1978 | $17.56 | $16.35 | $6,321.60 | 56 | $983.36 | 200 | $3,512.00 | $4,533.76 |
| 21280 | Greenawalt, Lynn K | 4/17/1978 | $17.27 | $15.70 | $6,217.20 | 16 | $276.32 | 200 | $3,454.00 | $3,762.72 |
| 21281 | Gratok, David J | 4/17/1978 | $16.81 | $15.75 | $6,051.60 | 60 | $1,008.60 | 200 | $3,362.00 | $4,409.60 |
| 21286 | Beaver, Samuel J | 4/24/1978 | $17.92 | $16.35 | $6,451.20 | 0 | $0.00 | 200 | $3,584.00 | $3,614.00 |
| 21291 | Dragone, Joseph G | 4/27/1978 | $14.94 | $14.65 | $5,378.40 | 28 | $418.32 | 200 | $2,988.00 | $3,440.52 |
| 21308 | Prencipe, John W | 6/8/1978 | $17.04 | $16.85 | $6,134.40 | 112 | $1,908.48 | 184 | $3,135.36 | $5,088.24 |
| 21317 | Ward, Nick F | 6/14/1978 | $16.17 | $15.70 | $5,821.20 | 60 | $970.20 | 184 | $2,975.28 | $3,982.08 |
| 21320 | Emmerick, Kenneth H | 7/6/1978 | $14.27 | $14.27 | $5,137.20 | 24 | $342.48 | 168 | $2,397.36 | $2,768.64 |
| 21323 | Elias, David J | 7/17/1978 | $17.27 | $15.70 | $6,217.20 | 80 | $1,381.60 | 152 | $2,625.04 | $4,041.44 |
| 21332 | Olay, Glenn H | 7/31/1978 | $14.85 | $14.85 | $5,346.00 | 36 | $534.60 | 152 | $2,257.20 | $2,820.00 |
| 21340 | Ecklund, Chad E | 8/2/1978 | $13.85 | $13.85 | $4,986.00 | 128 | $1,772.80 | 152 | $2,105.20 | $3,920.00 |
| 21343 | Spangler, Charles R | 8/10/1978 | $16.17 | $14.70 | $5,821.20 | 68 | $1,099.56 | 152 | $2,457.84 | $3,590.40 |
| 21345 | Tiller, Tod A | 8/14/1978 | $16.85 | $16.85 | $6,066.00 | 148 | $2,493.80 | 152 | $2,561.20 | $5,100.00 |
| 21352 | Gilmore, Gary F | 8/21/1978 | $14.92 | $14.35 | $5,371.20 | 156 | $2,327.52 | 136 | $2,029.12 | $4,400.44 |
| 21353 | Thomas, Kurt D | 8/23/1978 | $16.68 | $15.75 | $6,004.80 | 168 | $2,802.24 | 136 | $2,268.48 | $5,116.32 |
| 21360 | Davida, Donald A | 8/29/1978 | $16.43 | $15.70 | $5,914.80 | 64 | $1,051.52 | 136 | $2,234.48 | $3,316.00 |
| 21365 | Green, Clifford L | 9/6/1978 | $16.22 | $14.75 | $5,839.20 | 68 | $1,102.96 | 136 | $2,205.92 | $3,339.48 |
| 21368 | Casolo Jr, John F | 9/10/1978 | $15.35 | $15.35 | $5,526.00 | 32 | $491.20 | 136 | $2,087.60 | $2,604.00 |
| 21375 | Andrus Sr, Lewis L | 9/27/1978 | $17.41 | $15.75 | $6,267.60 | 108 | $1,880.28 | 120 | $2,089.20 | $4,003.68 |
| 21394 | Wolff, Richard E | 1/16/1979 | $14.42 | $13.23 | $5,191.20 | 200 | $2,884.00 | 56 | $807.52 | $3,729.92 |
| | TOTALS | | | | $737,146.80 | 13,276 | $219,920.84 | 19,112 | $318,336.24 | $543,115.28 |
| | | | | | | | $538,257.08 | | | |

Exhibit 11